# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

**In re:**
**CHANCE S. ROLLISON,**                        **Chapter 7**
      **Debtor.**                                      **Case No. 17-61097**

## MEMORANDUM OPINION

In this case, the Court must answer whether to reopen a closed chapter 7 no-asset bankruptcy case to allow the debtor to amend his schedules to add two creditors, whom the debtor had not scheduled or noticed during his case. For the reasons stated below, the Court denies the debtor's motion.

## FINDINGS OF FACT

On June 5, 2017, the debtor filed a "minimum filing" [1] petition for relief under Chapter 7 of the Bankruptcy Code, paid the filing fee, and filed a list of creditors. *See* ECF Doc. Nos. 1, 4. The debtor listed 16 names and addresses on the list of creditors.

On June 6, 2017, the Court issued the Notice of Chapter 7 Bankruptcy Case containing the deadline to object to dischargeability of a debt and the date, time, and place of the meeting of creditors.[2] The Court provided the notice containing these deadlines to the 16 creditors on the debtor's list of creditors. *See* Fed. R. Bankr. P. 2002; ECF Doc. No. 9.

Fourteen days after filing his petition, on June 19, 2017, the debtor filed the balance of his schedules and statements. *See* ECF Doc. No. 11. In the balance of schedules, the debtor

---

[1] A debtor must *at a minimum* file a petition to initiate a voluntary case under the Bankruptcy Code. 11 U.S.C. § 301(a). In addition to the petition, however, each debtor must file all required statements and schedules with the Court to proceed as a debtor. *See* Fed. R. Bankr. P. 1007(b). If not filed with the petition, such statements and schedules must be filed within 14 days of the petition. *See* Fed. R. Bankr. P. 1007(c).

[2] "[T]he United States trustee shall convene and preside at a meeting of creditors." 11 U.S.C. § 341(a). It is the duty of the debtor to appear at the meeting of creditors and be examined under oath. *Id.* § 343; Fed. R. Bankr. P. 2003(b)(1).

disclosed 18 names and addresses for creditors and parties to be notified and a total unsecured debt of $9061.65. The debtor certified under penalty of perjury the accuracy of these disclosures. Two days later, counsel for the debtor filed an amendment to the creditor matrix to add the two creditors who were listed in the balance of schedules but not on the original list of creditors, the Internal Revenue Service ("IRS") and Ford Motor Credit Company, LLC, and certified that he simultaneously sent them a copy of the Notice of Bankruptcy and Notice of the Meeting of Creditors.

The next month, on July 19, 2017, the chapter 7 trustee filed her Report of No Distribution. *See* ECF Doc. No. 16. After that the debtor filed his certification of completion of financial management education, and thereafter on September 19, 2017, the Court entered the discharge order.[3] *See* ECF Doc. No. 17, 18. The debtor's bankruptcy case was closed at 10:58 AM that same day. *See* ECF Doc. No. 19.

After having received his discharge and after his case was closed by the Court, the debtor attempted to file more amended schedules and another amended creditor matrix form.[4] In these documents, the debtor disclosed Ashleigh Gerber as an unsecured creditor for an undisputed debt in the amount of $8733.00 incurred on November 15, 2016, described as "Judgment." He also disclosed a debt to Leonard Sanberg in the amount of $8817.50 incurred on June 1, 2017, also described as "Judgment." Each of these debts are owed to individuals who were in litigation with the debtor in the months prior to the bankruptcy and who obtained judgments against the

---

[3] "The court shall grant the debtor a discharge, unless" certain exceptions exist, which are inapplicable to this case. 11 U.S.C. § 727(a); *see also* Fed. R. Bankr. P. 4004(c)(1) ("In a chapter 7 case, on expiration of the times fixed for objecting to discharge and for filing a motion to dismiss the case under Rule 1017(e), the court shall forthwith grant the discharge, except that the court shall not grant the discharge if" certain exceptions apply.).

[4] The Court issued the discharge order and closed the case on the day after the deadline passed to file an objection to discharge or to challenge whether certain debts are dischargeable. The debtor amended the schedules and creditor matrix to add the new creditors on the day after the deadline passed for creditors to object to dischargeability of debts. The amended schedules and amendment to creditor matrix, however, were not filed until hours after the Court had already closed the case.

2

debtor prior to the bankruptcy. When the debtor filed bankruptcy on June 7, 2017, he failed to provide either of these individuals with notice of the Meeting of Creditors and the deadline to object to dischargeability of their debts or object to his general discharge.

The Court issued an order of deficiency instructing the debtor that no action may be taken on the filed documents because the case was closed. *See* ECF Doc. No. 24. Thereafter, the debtor filed the motion to reopen this case. *See* ECF Doc. No. 27.

In the notice accompanying his motion to reopen, counsel for the debtor included a statement which told creditors they had until October 23, 2017, to file an objection to the reopening and that if an objection was filed, a hearing would be scheduled. *See* ECF Doc. No. 27. Ashleigh Gerber sent a letter to the Court objecting to the reopening to add her debt to the bankruptcy case. *See* ECF Doc. No. 29. In her letter, she alleged the debt was as a result of fraud. She also alleged the debt was as a result of the debtor's false representation about his identity as a licensed Henrico County inspector and his certifications to perform services allegedly performed for her.[5]

The debtor through counsel then scheduled the hearing on the motion to reopen. *See* ECF Doc. No. 31. At the hearing, on November 16, 2017, counsel for the debtor and the debtor appeared. Ms. Gerber did not appear at the hearing.

At the hearing, counsel for the debtor described that he filed the petition as a "bare-bones" filing to obtain emergency relief from a garnishment by one of the other creditors in the case (Ford Motor Credit Company, LLC). Counsel stated that the two omitted creditors were listed in the statement of financial affairs (contained in the balance of schedules filed 14 days after the initial petition), but were inadvertently excluded from the creditor matrix. Therefore,

---

[5] In her letter, Ms. Gerber explained that the debt owed to her arose when she hired the debtor to perform inspection services for her after the debtor represented he was a licensed inspector in Henrico County. Ms. Gerber stated that the debtor has never been a licensed inspector.

the two omitted creditors did not receive notice of the bankruptcy. Counsel represented that he did not discover the error until after the case had closed. This means the debtor disclosed only about a third of his total unsecured debt in his bankruptcy. He scheduled unsecured debt totaling $9061.65 but left out additional unsecured debt totaling $17,550.50.

In the bankruptcy case, the trustee determined no assets were available for distribution to creditors. For this reason, during the pendency of the case, the Court did not establish a deadline to file proofs of claim.

At the hearing on the motion to reopen, the debtor requested the Court reopen the case to add the unscheduled creditors. Counsel for the debtor explained the reopening was necessary so that he could defend Ms. Gerber's collection actions (specifically garnishment proceedings). In other words, the debtor wants this Court to clarify that the discharge injunction applies to Ms. Gerber and Mr. Sanberg. *See* 11 U.S.C. § 727.[6]

## JURISDICTION

The Court has jurisdiction over this bankruptcy case by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a), the delegation made to this Court by Order of Reference from the District Court entered on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. The decision to reopen a bankruptcy case is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

## CONCLUSIONS OF LAW

*Reopening*

---

[6] Counsel acknowledged that the reopening and discharge are "two separate maters" and seemed to agree that the reopening would not by itself determine the dischargeability of the debts. Counsel suggested that reopening would not prejudice the creditors because the creditors could be permitted a time period to file an action to determine dischargeability.

4

Bankruptcy Code section 350(b) provides that a closed case "may be reopened . . . to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). In analyzing this provision, the Fourth Circuit has adopted a discretionary approach to reopening, allowing the court to consider the totality of the circumstances in each particular case. *See Hawkins v. Landmark Fin. Co. (In re Hawkins)*, 727 F.2d 324, 326 (4th Cir. 1984); *In re Jones*, 367 B.R. 564, 567 (Bankr. E.D. Va. 2007). With that in mind, bankruptcy courts in Virginia have held that a court should reopen a case "only upon a showing of compelling circumstances." *In re Mutts*, 131 B.R. 306, 307 (Bankr. E.D. Va. 1991). At bottom, a court should not reopen a case "where it appears that to do so would be futile and a waste of judicial resources." *In re Carberry*, 186 B.R. 401, 402 (Bankr. E.D. Va. 1995). Although the Court has discretion in reopening a case for cause, the burden of establishing that cause exists is on the party seeking the reopening. *In re Hardy*, 209 B.R. 371, 374 (Bankr. E.D. Va. 1997).

Mr. Rollison seeks to reopen to add the creditors so that they will be subject to the discharge injunction.[7] Debtor's counsel appeared to concede that if the debts are of the kind described in section 523(a)(2), (4), or (6), the debts are not discharged. Counsel urged the Court to either hear his defenses or to schedule a deadline by which the creditor must take action in the bankruptcy court to determine the dischargeability of the debt.

Because the Court must first reopen the case, the Court declined to hear the arguments of counsel regarding the nature of the unscheduled debts and declined to set a deadline for the unscheduled creditors to object to dischargeability. *See In re Jones*, 367 B.R. 564, 567 (Bankr. E.D. Va. 2007) ("In considering a motion to reopen, the court should generally avoid ruling on

---

[7] In response to questioning at the hearing on the motion to reopen, counsel asserted that the discharge order "relates back" such that added creditors after the entry of the discharge order are nonetheless subject to the discharge injunction even though they had not been afforded notice and opportunity to object. In the course of the hearing, counsel acknowledged that the added creditors could be provided additional time and opportunity to object to the discharge of the debt.

5

the merits of the underlying matter to be considered, thereby forcing the debtor to prove his case twice."). To reopen requires the Court to be satisfied that it will not be a futile exercise. This means the court must determine, at this juncture, whether the debtor has met his burden to establish cause to reopen.

*Discharge of unlisted debts in a no-asset chapter 7 case*

The Bankruptcy Code provides a mechanism that answers the question of what happens to debts that are not listed or scheduled by a debtor in his bankruptcy case. Section 727(b) provides that "[e]xcept as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter." 11 U.S.C. § 727(b). Section 523 excepts from the 727 discharge debts

> (3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>     (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>     (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request; . . . .

11 U.S.C. § 523(a)(3). Because of the language of sections 523 and 727, courts have held that a debt may be discharged in a no-asset chapter 7 case, even if it was not listed, *if* the debt is not within an exception found in section 523. *See Judd v. Wolfe*, 78 F.3d 110, 111, 114-15 (3d Cir. 1996).[8]

---

[8] More specifically, section 523 excepts from the 727 discharge unlisted or unscheduled debts if: (1) the debts are not of the kind specified in section 523(a)(2), (4), or (6) and were not listed or scheduled in time to file a proof of claim or the creditor did not have actual knowledge of the bankruptcy in time to file a proof of claim; or (2) the debts are of a kind specified in 523(a)(2), (4), or (6) and the creditor was not listed or scheduled in time to file a proof of claim and to file a complaint to determine the dischargeability of his debt, unless the creditor had actual knowledge of the bankruptcy case in time to file the proof of claim and dischargeability complaint. 11 U.S.C. § 523(a)(3).

6

In a chapter 7 case, if a trustee determines that no assets are available for distribution, no proof of claim deadline must be imposed. *See* Fed. R. Bankr. P. 2002(e). This means that in a no-asset chapter 7 case, a creditor would have no time limit to file a proof of claim because no time limit exists (that is, no deadline is imposed). In this way, courts have concluded a debt which was not scheduled in a chapter 7 no-asset case is subject to the discharge order unless it is a debt of the kind specified in section 523 (a)(2), (4), or (6). *See In re Brown*, No. 04-00291, 2010 WL 7275603, at *1 (Bankr. W.D. Va. Nov. 12, 2010) (Stone, J.) ("In a 'no asset' bankruptcy case in which there is never a deadline to file a proof of claim, the debtor's continuing liability to pay the obligation is not affected by whether or not the case is reopened to allow an omitted creditor to be added to the schedules."). Stated differently, in a no-asset[9] chapter 7 case, unless ordered otherwise, all of a debtor's prepetition debts—both those scheduled and those not scheduled—are discharged upon entry of the discharge order, except for those debts which are of the kind specified in section 523(a)(2), (4), or (6).[10]

---

[9] In an asset chapter 7 case in which the debtor listed a debt but provided an address for that creditor which he knew or should have known was incorrect and as such the creditor did not timely file a dischargeability complaint, the District Court for the Western District of Virginia imposed a three part test when applying section 523(a)(3)(A). The test requires a court to consider: "1) the reasons the debtor failed to list the creditor; 2) the amount of disruption which would likely occur; and 3) any prejudice suffered by the listed creditors and the unlisted creditor in question." *Bougie v. Livingston (In re Livingston)*, No. 12 CV 1:15CV00036, slip op. at 12 (W.D. Va. Jan. 4, 2016) (Jones, J.). This test would not apply in the present case, because the present case is not an asset chapter 7 case.

[10] Section 523(a)(2), (4), and (6) excepts from discharge, any debt:
    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
        (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
        (B) use of a statement in writing—
            (i) that is materially false;
            (ii) respecting the debtor's or an insider's financial condition;
            (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
            (iv) that the debtor caused to be made or published with intent to deceive; or
. . . .
    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

7

Failure to schedule debts in a no-asset chapter 7 case does not result in a determination that those debts are nondischargeable. Instead, the impact of failure to timely disclose debts is that the debtor forfeits two benefits otherwise available to him: (i) the 60-day limitations period to file a complaint to determine dischargeability of a debt under Federal Rule of Bankruptcy Procedure 4007(c) and (ii) exclusive federal jurisdiction of dischargeability determinations pursuant to section 523 (a)(2), (4), or (6). *See In re Keenom*, 231 B.R. 116, 126–27 (Bankr. M.D. Ga. 1999) ("The statutory scheme provides that a state court can decide whether the creditor has a colorable or viable claim that the debt is of a kind specified in sections 523(a)(2), (4), or (6) without intruding on the exclusive jurisdiction of the bankruptcy courts to determine if it actually is such a debt. And if the state court finds [he] does have a colorable claim under sections 523(a)(2), (4), or (6) and was deprived of the opportunity to timely request a determination of dischargeability of the debt because he had no notice of the bankruptcy proceeding in time to do so, then such a state court has the authority to declare that the debt was not discharged in the bankruptcy proceeding and proceed to a judgment that the debtor remains personally liable for the debt."). In short, failure to timely schedule a debt in a no-asset chapter 7 case deprives a debtor of an expeditious determination of dischargeability of the unscheduled debt by the bankruptcy court.

In this case, Ms. Gerber, one of the unscheduled creditors, suggests in her letter that her debt is of the kind specified in section 523(a)(2). She described facts which show a plausible cause of action under section 523(a)(2)(A). It is reasonable to suppose that had Ms. Gerber been

---

. . . .
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity; . . . .
11 U.S.C. § 523(a)(2), (4), (6).

listed timely, she may have filed an action to contest the dischargeability of her debt.[11] Based on Ms. Gerber's statements that others may also have been defrauded by Mr. Rollison, it is possible that Mr. Sanberg's debt may also fall within this category. By failing to list Ms. Gerber and Mr. Sanberg in a timely manner, the debtor, Mr. Rollison, forfeits the protection of section 523(c)(1) and Federal Rule of Bankruptcy Procedure 4007(c). *See In re Woolard*, 190 B.R. 70, 74 (Bankr. E.D. Va. 1995) (relying heavily on the analysis in *Beezley v. Cal. Land Title Co. (In re Beezley)*, 994 F. 2d 1433 (9th Cir. 1993)). This means that the time period has not expired to determine the dischargeability of Ms. Gerber's and Mr. Sanberg's debts. *See Hathorn v. Petty (In re Petty)*, 491 B.R. 554, 559 (B.A.P. 8th Cir. 2013) ("[A] complaint under § 523(a)(3) may be filed at any time."). Not only that, the forum is not limited to the bankruptcy court. *Apex Oil Co., Inc. v. Sparks (In re Apex Oil Co., Inc.*), 406 F. 3d 538, 543 (8th Cir. 2005) (holding that the state court may adjudicate the applicability of a bankruptcy injunction to state court litigation).

The upshot is that, because Mr. Rollison's case is a no-asset chapter 7 case, if the debts owed to Ms. Gerber and to Mr. Sanberg are not of the kind specified in section 523(a)(2), (4), or (6), the debts have been discharged. If, however, the debts owed to Ms. Gerber and to Mr. Sanberg (as well as any other unscheduled debt) are of the kind specified in section 523(a)(2), (4), or (6), such debts have not been discharged. *See In re Alexander*, 300 B.R. 650, 656 (Bankr. E.D. Va. 2003) (Tice, J.) ("[I]n a no asset case . . . scheduled and unscheduled debt is discharged pursuant to §§ 727(b) and 523(a)(3) when the court enters the discharge order unless a debt is excepted from discharge under § 523(a)(2), (4) or (6)."); *see also* S. Rep. No. 95-989, at 78–79

---

[11] Ms. Gerber's debt has been reduced to judgment. Ms. Gerber is not precluded from showing that the debt was obtained by fraud, false pretenses, or a false representation and thus that the judgment debt is nondischargeable, even if the state court judgment order did not mention these grounds *See Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 220 (4th Cir. 2007) (noting that the Supreme Court "has ruled that a bankruptcy court may look behind the record of the underlying judgment to determine if the debtor indeed obtained the debt through fraudulent means") (citing *Brown v. Felsen*, 442 U.S. 127, 138–39 (1979)).

(1978), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 5864 ("The debt is excepted from discharge if it was not scheduled in time to permit timely action by the creditor to protect his rights, unless the creditor had notice or actual knowledge of the case."). If Ms. Gerber and Mr. Sanberg wish for a determination that their debts are indeed of the kind described in section 523(a)(2), (4), or (6), they are not constrained to the bankruptcy court forum to bring such action and are not limited to a particular time period.

The Court recognizes that some courts have considered whether the debtor intentionally omitted the debt when considering whether to permit reopening in the bankruptcy court, or considering whether the omitted debt may be discharged. *See, e.g.*, *Alexander*, 300 B.R. at 657 (ultimately finding that "it makes no difference whether debtor intentionally failed to schedule"). The Bankruptcy Code, however, does not limit the applicability of section 523(a)(3) based on the intentions of the debtor.[12] For this reason, this Court finds that Mr. Rollison's prepetition debt is discharged or not discharged to the extent permitted by sections 727 and 523, without first considering his intention in failing to schedule and notice all of his creditors.[13]

---

[12] Furthermore, the Code does not supplant constitutional due process. Due process requires notice. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). What an unlisted creditor (who does not have actual notice) loses is both the right to determine if his debt is not discharged and the right to participate in the distribution of assets (if the trustee intends to liquidate assets). For these reasons, to satisfy constitutional due process, the omitted creditor may challenge the dischargeability of his debt after the expiration of the deadline for other creditors, and the omitted creditor is not restricted to the bankruptcy court to challenge the dischargeability but may do so in any appropriate forum. *See* 11 U.S.C. § 523(a)(3); *Colonial Sur Co. v. Weismann*, 564 F.3d 526, 530–31 (1st Cir. 2006) (explaining why failure to provide notice before taking away right to challenge dischargeability or participate in bankruptcy case deprived unlisted creditor of due process); *Apex Oil Co., Inc. v. Sparks (In re Apex Oil Co., Inc.)*, 406 F. 3d 538, 543 (8th Cir. 2005) (holding that the state court may adjudicate the applicability of a bankruptcy injunction to state court litigation).

[13] If the omission had been intentional, other statutes may provide some remedy. For example, failure to list creditors is a type of false oath subjecting the debtor to consideration for potential criminal bankruptcy fraud (for which there is no statute of limitations). *See* 18 U.S.C. § 157. Worse, if the failure to list creditors is coupled with concealment of assets (the creditor may know of assets or potential assets not disclosed), the discharge may have been obtained by fraud and may be subject to revocation, plus the debtor may be subject to criminal sanctions. *See* 11 U.S.C. § 727(d); 18 U.S.C. §§ 152, 157.

10

In the instant case, the debtor has failed to meet his burden of demonstrating that cause exists to reopen his bankruptcy case. At the hearing, counsel for the debtor relied upon *Bluefield Community Hospital v. Smolarick (In re Smolarick)*, 56 B.R. 720 (Bankr. W.D. Va. 1986), to support reopening this closed no-asset case for the purpose of adding and discharging previously omitted debts. Unlike the current case, the debt at issue in *Smolarick* was a hospital debt and did not contain any of the criteria for nondischargeability under section 523(a)(2), (4), or (6). The *Smolarick* court exercised its discretion to reopen the case to allow the addition of the unscheduled creditor, and the court held the hospital debt discharged. *Id.* at 722. The facts in *Smolarick* are dissimilar to the facts in this case in one crucial way: that case involved hospital debt and this case involves a debt that the creditor alleges may be of the kind in section 523(a)(2).

The Bankruptcy Code, in particular sections 523 and 727, address the effect of the entry of a discharge order on unscheduled debts.[14] If the debts are the kind of debts described in 523(a)(2), (4), or (6), they are not subject to the discharge order. On the other hand, if the debts are not of that type, then even though unscheduled they are subject to the discharge order. These sections show that reopening to merely amend schedules would not affect the dischargeability of the debts to be added.

This Court finds that the debtor has not met his burden to prove compelling circumstances to reopen for the purpose of scheduling debts he did not previously disclose on his bankruptcy filings. Because reopening to amend the schedules would not alter the effect of sections 523 and 727, reopening would be futile and a waste of judicial resources. For these

---

[14] The denial of the motion to reopen does not prejudice the unscheduled creditors from seeking in an appropriate jurisdiction a determination of the nature of the debt owed to them nor does it preclude the creditor from seeking the determination in this Court.

11

reasons, the Court denies the motion to reopen. The Court will issue a separate order based on the conclusions in this opinion.

The Clerk is directed to send copies of this Opinion to the debtor, Chance S. Rollison, 205 Jennings Rd., Cartersville, VA 23027; counsel for the debtor, Graham T. Jennings, Jr., P.O. Box 426, Powhatan, VA 23139; the chapter 7 trustee, Hannah W. Hutman, Hoover Penrod, 342 S. Main Street, Harrisonburg, VA 22801; Margaret Garber, Assistant U.S. Trustee, the Office of the United States Trustee, 210 First Street, Suite 505, Roanoke, VA 24011; Ashleigh C. Gerber, 5 S. Elm Avenue, Henrico, VA 23075; Ashleigh C. Gerber, 5160 Crewesville Rd., Bumpass, VA 23024; and Leonard Sanberg, dba Next Step Homes LLC, 4290 Steger Creek Drive, Powhatan, VA 23139.

**Entered: January 18, 2018**

_____
Rebecca B. Connelly
U.S. Bankruptcy Judge